United States District Court
Southern District of Texas
**ENTERED**
October 28, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| as Broadcast Licensee of the | § | |
| September 15, 2012 Julio Cesar | § | |
| Chavez, Jr. v. Sergio Martinez | § | |
| Fight Program, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. A. H-15-2638 |
| | § | |
| RIVER PARK SPORTS BAR, INC., | § | |
| individually and d/b/a EL RIVER | § | |
| PARK SOCCER LEAGUE and d/b/a | § | |
| RIVER PARK SPORTS BAR, INC.; | § | |
| RODOLFO CASTILLO, individually | § | |
| and d/b/a RIVER PARK SPORTS | § | |
| BAR and d/b/a EL RIVER PARK | § | |
| SOCCER LEAGUE and RIVER PARK | § | |
| SPORTS BAR, INC.; and ALEJANDRA | § | |
| CASTILLO, individually and | § | |
| d/b/a RIVER PARK SPORTS BAR and | § | |
| d/b/a EL RIVER PARK SOCCER | § | |
| SOCCER LEAGUE and d/b/a RIVER | § | |
| PARK SPORTS BAR, INC., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The above referenced "Anti-Piracy" case, grounded in the Federal Communications Act of 1934, as amended by the Federal Cable Communications Act of 1984, 47 U.S.C. §§ 553 and 605, alleges that *pro se* Defendants,[1] without authorization from Plaintiff J&J Sports Productions, Inc. and without paying the required commercial license fee to Plaintiff, willfully and

---

[1] Defendants are the River Park Sports Bar, Inc., individually, and d/b/a River Park Sports Bar and d/b/a El River Park Soccer League and d/b/a River Park Sports Bar, Inc.; Rodolfo Castillo, individually, and d/b/a River Park Sports Bar and d/b/a El River Park Soccer League and d/b/a River Park Sports Bar, Inc.; and Alejandra Castillo, individually, and d/b/a River Park Sports Bar and d/b/a El River Park Soccer League and d/b/a River Park Sports Bar, Inc. (collectively "Defendants").

-1-

illegally intercepted and/or received the interstate communication of the closed-circuit televison programing of the September 15, 2012 Julio Cesar Chavez, Jr. v. Sergio Martinez, WBC Middleweight Championship Fight Program, including undercard or preliminary bouts (collectively, the "Event"), transmitted via satellite, at Defendants' El River Park Soccer League a/k/a River park Sports Bar at 14211 Reeveston Road, Houston, Texas 77039 (the "Establishment") without paying the licensing fee to Plaintiff, thereby misappropriated Plaintiff's exclusive license[2] in the fifty states of the United States for exhibition of the program and infringed upon Plaintiff's exclusive rights to sub-license that telecast.

Pending before the Court is Plaintiff's motion for summary judgment (instrument #14). Defendants have failed to file a response.

In its motion for summary judgment against Defendants, jointly and severally, Plaintiff seeks (a) statutory damages in the amount of $10,000.00 under 47 U.S.C. § 553(c)(3)(A)(ii)[3]; (b)

---

[2] A copy of the *Closed Circuit Television License Agreement* for the event is attached as #14-2, Exhibit A-1. Plaintiff's exclusive license authorized it, alone, to sub-license the Event to commercial establishments for a fee, which was based on the capacity of each establishment. Affidavit of Thomas Riley, #13-2, Ex. A-1, ¶¶ 5 and 7; Rate card attached as Exhibit A-3.

[3] Section 553(a)(1) of the FCA provides in relevant part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 553(c)(1) recites, "Any person aggrieved by violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction."

additional damages for willful violation committed for purposes of commercial advantage or private financial gain, in the amount of $50,000 pursuant to 47 U.S.C. § 553(c)(3)(B); (c) attorney's fees under 47 U.S.C. § 553(c)(2)(C)("The court may . . . direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.") in the contingency amount of one-third (1/3) of the recovery, or, alternatively, the hourly time stated in attorney David M. Diaz's affidavit (Ex. B) for prosecution of this case through summary judgment, along with attorney's fees for post-trial and appellate services; (d) a permanent injunction under § 553(c)(2)(A), enjoining Defendants from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act; and (e) post-judgment interest at the highest rate permitted by law.

The Court notes that the summary judgment motion (#14 at pp. 13-21) has abandoned Plaintiff's prayer for statutory damages up to $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), statutory damages in an amount up to $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and attorney's fees and costs under 47 U.S.C. §

---

Section 553(c)(3)(A)(ii) allows an aggrieved party to recover statutory damages for "all violations involved in the action, in a sum not less than $250 or more than $10,000 as the court considers just." Statutory damages are appropriate where actual damages would be difficult to prove. *Kingvision Pay-Per-View, Ltd. v. Guerro*, Civ. A. No. 3:08-1970-G (BF), 2009 WL 1973285, at *3 (N.D. Tex. July 7, 2009).

Section 553(c)(3)(B) provides, "In any case in which the court finds that the violation was committed wilfully and for purposes of commercial advantage or private gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000."

605(e)(3)(B)(iii), that was included in the complaint (#1 at p.

6).   Plaintiff now seeks to recover for illegal reception of the

fight in dispute via cable transmission under § 553, perhaps

because in *J&J Sports Productions, Inc. v. Mandell Family

Ventures, LLC*, 751 F.3d 346, 351 (5th Cir. 2014), the Fifth Circuit

joined the Seventh and Third Circuit Courts of Appeal[4] "in holding

---

[4] *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196,
207 (3d Cir. 2001)("Section 605 does not render § 553 superfluous
because § 605 does not create liability for the interception of
cable system transmissions. . . . § 605 encompasses the
interception of satellite transmissions 'to the extent reception
or interception occurs prior to or not in connection with,
distribution of the service over a cable system,' and no more.
H.R. Rep. No. 98-934, at 83, *reprinted in* 1984 U.S.C.A.A.N. at
4720.  Once a satellite transmission reaches a cable system's wire
distribution phase, it is subject to § 553 and is no longer within
the purview of § 605."); and *United States v. Norris*, 88 F.3d 462,
469 (7th Cir. 1996)("The only plausible consistent interpretation
of [H.R. Rep. No. 98-934, at 83-84] is that Congress intended for
§ 605 to apply to the unlawful interception of cable programming
transmitted through the air, while it intended § 553 to apply to
the unlawful interception of cable programing while it is actually
being transmitted over a cable system.").  *See* Brian Fleming
*"Wire" Circuit Courts Split on Cable Piracy:  The Fifth Circuit
Examines Federal Telecommunications Law in J&J Sports Productions,
Inc. v. Mandell Family Ventures*, 56 B.C.L. Rev. E-Supplement 18
(2015).  In other words, section 553 "exclusively governs these
multi-step communications when the reception by the customer
occurs after the radio signal is retransmitted via cable wire."
*Id*. at 19.   The Closed Circuit Television License Agreement
between the Promoters and Plaintiff (Ex. A-1, #14-2, at p. 4,
4(a)("Addressing of Decoders")("Promoter shall deliver either, as
Promoter shall elect in its discretion, (1) the encrypted
transmission of the video and audio signal of its telecast of the
Event to a domestic satellite or other delivery point from which
the signal is capable of being received by DDS and AVAIL-TVN, for
redistribution to your designated outlets or (2) by fiber optic
cable to a delivery point at which the signal is cable of being
received by DSS and AVAIL-TVN, for redistribution to your
designated outlets.") and 5 ("Pay-Per-View Exhibitions and Delayed
Cable Telecast")("You acknowledge that Promoter shall license the
live and delayed cable television and direct broadcast television
exhibition of the Event in the Territory on a pay-per-view basis,
with subsequent cable delayed telecasts . . . .") address both
methods of delivery.  Because Plaintiff here was the plaintiff in
the *Mandell Family Ventures* case, and its counsel's firm also

that § 605 does not encompass the receipt or interception of communications by wire from a cable system," but "only unauthorized interception or receipt of *radio* communications." The Fifth Circuit determined that where a cable provider sends programing through radio, which is then re-transmitted through cable wire to the customer, § 553 exclusively governs these multi-step re-transmissions to the customer, who actually receives the signal via cable wire.   Emphasizing the clarity of the language of the statute, the *Mandell Family Ventures*  panel observed, "A logical reading of the two provisions reveals a clear demarcation whereby [§] 605 deals with communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire. [citation omitted]"  *Id.* at 353-54.

## Standards of Review

### *Federal Rule of Civil Procedure 56*

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to

---

represented J&J Sports Products in that case (#14-3, Ex. B, Affidavit of David M. Diaz at p.6, ¶ 11), and because the prayer in its motion for summary judgment is brought expressly under § 553, this Court concludes that the broadcast at issue here was re-transmitted by cable wire.

find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

***Federal Rule of Civil Procedure 8(b) ("Defenses; Admissions and Denials")***

Under Federal Rule of Civil Procedure 8(a), a plaintiff's claim for relief must contain a short and plain statement of the grounds on which the pleader claims he is entitled to relief.   Rule 8(b)("Defenses; Admissions and Denials.") states,

> (1) *In General.*  In responding to a pleading, a party must:
>
>> (A) state in short and plain terms its defenses to each claim asserted against it; and
>>
>> (B) submit or deny the allegations asserted against it by an opposing party;
>
> (2) *Denials--Responding to the Substance.*  A denial must fairly respond to the substance of the allegation.
>
> (3) *General and Specific Denials.*  A party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds--may do so by a general denial.  A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.
>
> (4) *Denying Part of an Allegation.*  A party that intends in good faith to deny only part of an allegations must admit that part that is true and deny the rest.
>
> (5) *Lacking Knowledge or Information.*  A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.
>
> (6) *Effect of Failing to Deny.*  An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied.  If a responsive pleading is not required, an allegation is considered denied or avoided.

Plaintiff complains that Defendants Alejandra Castillo and Rodolfo Castillo's answer (#10, which states only, "General Denial.  Respectfully deny all of the Plaintiff's allegations in their original petition."), "avoid[s] their obligation of answering Plaintiff's claims in this case."  Plaintiff quotes 5 Wright & Miller, *Federal Practice & Procedure* § 1265 (3d ed. 2004): "[T]he rule expressly stipulates that a party may not use this form of denial unless the pleader intends to controvert the entire complaint including the averment of the grounds upon which the court's jurisdiction."  Plaintiff urges that therefore "Plaintiff's claims as asserted in the Complaint should be deemed admitted against Defendants."  Plaintiff cites no case where such a sanction has been placed on a *pro se* defendant for filing a general denial, and the Court has found none.

Because Defendants are proceeding *pro se*, the Court finds that Plaintiff's requested remedy to be too harsh. Pleadings filed *pro se* are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Defendants are clearly not knowledgeable about the law, the Court cannot be sure that Defendants did not intend to deny all the pleadings allegations, including jurisdiction, and it certainly cannot find they are lacking in good faith from what little has happened in this suit and given the fact that they responded to requests for admission and their responses have been used to

support Plaintiff's motion for summary judgment.[5]  Rule 8(f),
"**Construing Pleadings**," states, "Pleadings mut be construed so as
to do justice."  Instead of deeming Plaintiff's allegations as
admissions against Defendants, the Courts finds that addressing
Plaintiff's summary judgment arguments under the established
standard is a more just and thus the preferable approach.  It is
well established in the Fifth Circuit that "[a] federal court may
not grant a 'default' summary judgment where no response has been
filed."  *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J,
2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v.
MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat.
Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279
(5th Cir. 1985).  If no response to the motion for summary judgment
has been filed, however, the court may find as undisputed the
statement of facts in the motion for summary judgment.  *Id.* at *1
and n. 2*, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d
508, 515 (N.D. Tex. 2003)(where no opposition is filed, the
nonmovant's unsworn pleadings are not competent summary judgment
evidence and movant's evidence may be accepted as undisputed).
*See also Unum Life Ins. Co. of America v. Long,* 227 F. Supp. 2d
609 (N.D. Tex. 2002)("Although the court may not enter a 'default'
summary judgment, it may accept evidence submitted by [movant] as
undisputed.")*; Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D.

---

[5] The Court notes that while originally Defendants did
not respond to Plaintiff's complaint and after Plaintiff filed for
entry of default, they did appear at Judge Stacy's scheduling
conference on January 12, 2016.  She advised them to file an
answer, and they did so the next day with the general denial
(#10).

Tex. 1996)("A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence."). Thus the Court may decide whether or not Plaintiff shows that it is entitled to summary judgment as a matter of law. Defendants have had sufficient opportunity to respond to the motion.

## Applicable Law

Title 47 U.S.C. § 553 provides in relevant part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Moreover it imposes civil and criminal liability on any person "intercepting or receiving any communications service offered over a cable system." "The Communications Act is a strict liability statute," and a plaintiff need only demonstrate that "(1) the Event was shown in Defendants' Establishment, and (2) the exhibition was not authorized by [the plaintiff license holder]." *Innovative Sports Management, Inc. v. Mazatlan Enterprises, LLC*, No. A13-CA-785-SS, 2014 WL 808075, at * (W.D. Tex. Feb. 28, 2014), *citing inter alia Joe Hand Promotions, Inc. v. Macias*, No. H-11-1773, 2012 WL 950157, at *2 (S.D. Tex, Mar, 19, 2012).

Section 553(c)(3)(A)(i)and (ii)("the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just") allows the court to award either actual or statutory damages. Plaintiff here seeks

statutory rather than actual damages.  Furthermore § 553(c)(3)(B) states, "In any case in which the court finds that the violation was committed willfully[6] and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

A commercial motive can be shown by evidence that defendants advertised the showing of the event, charged a cover (and consideration of the amount) to view the broadcast, broadcast it on a number of televisions, especially large-screen televisions, and sold food and beverages to the patrons present during the broadcast. *J&J Productions, Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F. Supp. 809, 817-18 (N.D. Tex. 2015)(and cases cited therein).

Given the complexity of intercepting transmissions and the limited means of intercepting closed circuit broadcasting of pay-per-view events, courts generally have found that violations of the statute were willful.  *Morelia Mexican Restaurant, Inc.*, 126 F. Supp. at 817 (and cases cited therein).

Courts vary widely in determining the appropriate amount of additional damages under 47 U.S.C. § 553(C)(3)(B)("In any case in which the court finds that the violation was committed

---

[6]  In *Trans World Airlines v. Thurston*, 469 U.S. 111, 127 (1985), the Supreme Court ruled that the standard for willfulness in a civil case is lower, requiring proof only of "a disregard for the governing statute and an indifference to its requirements." That standard has been adopted in suits under the Cable Communications Policy Act.  *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990).

willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, under subparagraph (A), by an amount of not more than $50,000."). *Morelia Mexican Restaurant, Inc.*, 126 F. Supp. at 818 (awarding four times the statutory damages ($20,000) for additional damages where defendants' establishment advertised the event through posters displayed on the exterior of the building, charged a $10 cover, broadcast the Event on five televisions, one of which was a large-screen televison; sold food and beverages, and broadcast the Event to about sixty patrons in the establishment), citing the following cases: *Joe Hand Promotions, Inc. v. Alima*, Civ. A. No. 3:13-CV-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014)(awarding additional damages in the amount of four times the statutory base where defendant charged a cover and showed the event on nine screens to approximately 85-125 patrons); *J&J Sports Productions, Inc. v. Q Café*, Inc., Civ. A. No. 3:10-CV-02006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012)(awarding additional damages in the amount of five times the statutory award, citing the location of the broadcast in an urban area and the importance of deterring future violations); *J&J Sports Productions, Inc. v. Beck*, Civ. A. No. L-13-57, 2013 WL 5592333, at *3 (S.D. Tex. Oct. 9, 2013); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001)(awarding five time the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). *See also J&J Sports Productions, Inc. v. Casita Guanajuato, Inc.*, 2014 WL

1092177, at *2 (W.D. Tex. Mar. 19, 2014)("The willfulness of Defendants' violation is established by J&J's allegations, taken as true, which indicate an unauthorized commercial establishment can only receive a broadcast of the Event through some wrongful action, such as using an unauthorized decoder or satellite access card, or moving an authorized cable box from its authorized location (such as a personal residence) to the commercial establishment.").

Where an aggrieved party prevails under the FCA, the Court may order recovery of full damages, including attorney's fees under 47 U.S.C. § 553(c)(2)(C)("The court may . . . direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.")  "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate," a sum commonly called the "lodestar." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  There is a strong presumption that the lodestar is a reasonable fee, and the fee applicant bears the burden of demonstrating that an upward adjustment by application of the *Johnson* factors is necessary to calculate a reasonable fee. *Walker v. Dept. of HUD*, 99 F.3d 761, 771 (5th Cir. 1996); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), *cert denied*, 516 U.S. 862 (1995).

-14-

A reasonable hourly rate is that rate in the community for such legal services rendered by attorneys of comparable skill, experience, and reputation. *Alberti v. Klevenhagen*, 896 F.2d 927, 936*, vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990); *Heidtman v. County of El Paso*, 171 F.3d 1039, 1043 (5th Cir. 1999). A reasonable hourly rate should be in accord with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In addition to the community rate, the district court must also consider the attorneys' regular rates. *Louisiana Power & Light Co.*, 50 F.3d at 328. Furthermore, the court may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees. *Davis v. Bd. of Sch. Comm'rs of Mobil County*, 526 F.2d 865, 868 (5th Cir. 1976).

The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon v. Hunting Energy Services, LP*, Civ. A. No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4 2006), *citing Louisiana Power & Light Co.*, 50 F.3d at 329. The fee applicant bears the burden of showing that the hours claimed were reasonably expended. *Hensley*, 461 U.S. at 437.

In determining what is a reasonable fee, the courts in the Fifth Circuit must consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989)(holding that a fee award under § 1988 should not be capped by a contingent fee agreement between the attorney and his client).  The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.  Based on one or more *Johnson* factors, the court may apply a multiplier to adjust the lodestar up or down if that factor or factors are not already taken into account by the lodestar, itself. *Strong*, 137 F.3d at 850.  An adjustment may only be made if the *Johnson* factor has not already been accounted for in the lodestar. *In re Fender*, 12 F.3d 480, 487 (5th Cir.), *cert. denied*, 511 U.S. 1143 (1994); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.)("[T]he district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the

-16-

necessary adjustments."), *cert. denied*, 510 U.S. 991 (1993).  Four of the *Johnson* factors are presumably included in the lodestar calculation:  the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984); *Shipes*, 987 F.2d at 320.  The Fifth Circuit has also held that two other factors, time limitations imposed by the client or the circumstances and preclusion of other employment, are generally subsumed in the lodestar calculation, too.  *Shipes*, 987 F.3d at 321-22; *Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).  "Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by specific evidence on the record and detailed findings by the lower courts." *Walker*, 99 F.3d at 771, *citing Alberti v. Klevenhagen*, 896 F.2d 927, 936 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* ("*Delaware Valley I*"), 478 U.S. 546, 564-65 (1986))(*quoting Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 323-24 (W.D. Tex. 2007).

The Court may "grant temporary and full injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section."  47 U.S.C. § 553(c)(2)(a).

## Background

Supported by affidavits from (1) Thomas P. Riley (Ex. A), Plaintiff's counsel and custodian of business records for The Law Offices of Thomas O. Riley, and from (2) Lena Bush (Ex. A-2), the auditor of the telecast Event at Defendants' Establishment, in addition to (3) Defendants' admissions in response to Plaintiff's requests (Exs. C, D, and E), Plaintiff, which is in the business of marketing and licensing commercial exhibitions of pay-per-view closed-circuit prizefight events, was the exclusive provider and licensor of the Event (the September 15, 2012 Julio Chavez, Jr. v. Sergio Martinez Fight Program, including the undercard and preliminary bouts), with proprietary rights to exhibit and sublicense the telecast of the Event at closed circuit locations. Without authorization and without paying the required commercial license fee to Plaintiff, Defendants illegally intercepted, received or assisted in the interception and receipt of the closed circuit telecast of the Event and exhibited or assisted in the exhibition of that telecast at Defendants' Establishment, El River Park Soccer League a/k/a River Park Sports Bar, at 14211 Reeveston Road, Houston, Texas 77039.

Plaintiff has submitted an affidavit from Thomas P. Riley (Ex. A), which details types of damages that Plaintiff claims it has suffered, including loss of existing and potential customers, loss of sublicense fees, financial loss, loss of good will, and loss of reputation.

Riley's affidavit further explains that an unauthorized commercial establishment cannot receive the Event without some wrongful action, because Plaintiff did not provide the required

electronic decoding equipment and satellite coordinates for Defendants to receive the signal to broadcast the event. Moreover the transmission, which originated via satellite, was electronically coded or scrambled to prevent unauthorized interception or receipt. Ex. A at ¶ 6. Therefore if an unauthorized establishment illegally obtained the transmission to gain direct or indirect commercial advantage or private financial gain under 47 U.S.C. § 553(c)(3)(B), as Plaintiff's exhibits demonstrate happened here, that establishment did so willfully by altering the cable or satellite service to bring the signal of the Event into the Establishment or by moving an authorized decoder or satellite card from its authorized location to the commercial establishment.

Defendants' admissions to Plaintiff's requests for admission further demonstrate that the entire Event was shown at their commercial Establishment, open to the public, on September 15, 2012. Exhibit C (as to Defendant River Park Sports Bar, Inc.) at Response Nos. 9-12; Ex. D (as to Defendant Rodolfo Castillo) at Response Nos. 9-12; and Ex. E (as to Defendant Alejandra Castillo) at Response Nos. 9-11). Moreover they support Plaintiff's charge that River Park Sports Bar, Inc. owned the Establishment (Ex. C at Response No. 39). The admissions demonstrate that Rodolpho Castillo and Alejandra Castillo were Officers and Directors of the owner on the date of the Event (Ex. C at Response Nos. 46-49; Ex. D at Response Nos. 39-40; and Ex. E at Response No, 29-40), were also the owners and managers of the Establishment on the date of the Event (Ex. D at Response Nos. 41-42; Ex. E at Response Nos.

41-42), had the right and ability to supervise the activities of the Establishment on September 15, 2012 (Ex. C at Response No. 43; Ex. D at Response Nos. 43-44; and Ex. E and Response Nos. 43-44), and had a financial interest in the Establishment's activities on that day (Ex. C at Response Nos. 44-45; Ex. D at Response No. 45; and Ex. E at Response No. 53). The admissions establish that each of them owned the alcohol license or permit for the Establishment on the date of the Event. (Ex. C Response No. 41; Ex. D No. 46).[7] The admissions also support the allegation that a fee had to be paid to Plaintiff to view the telecast in their Establishment legally (Ex. C at Response Nos. 17-18; Ex. D at Response Nos. 17-18). Furthermore the Event was broadcast at the Establishment for Defendants' financial gain (Ex. C at Response No. 55; Ex. D at Response Nol 58; and Ex. E at Response No, 58).

### Court's Determination

The Court finds that Plaintiff has met its burden of showing through uncontroverted evidence, including affidavits and Defendants' responses to requests for admission, that Plaintiff is entitled to summary judgment because on September 15, 2012, Defendants, jointly and severally, without authorization, willfully intercepted or received communications over a cable

---

[7] Rodolpho Castillo and Alejandra Castillo are vicariously and jointly and severally liable for the unauthorized broadcast of the Event because each admitted he or she (1) had the right and ability to supervise the Establishment's activities"; (2) had a financial interest in those activities; and (3) owned an alcohol license for the Restaurant on the date the Program was broadcast. *J&J Sports Productions, Inc. v. Restaurant & Taqueria Cristina*, No. 3:11-cv-3104-N (BF), 2013 WL 3878589, at *5 (N.D. Tex. July 29, 2013).

system in a single violation of the Cable Communications Act, i.e., willfully and illegally pirated the transmission of the fight in dispute into their Establishment for purposes of commercial advantage. Defendants have failed to file a response to the motion for summary judgment and to show there is a genuine issue of material fact for trial.

Plaintiff has elected to receive statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii). Usually a court holds an evidentiary hearing to determine the amount of damages, but a hearing is unnecessary if "the amount claimed in a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). The Court finds the amount of damages here is mathematically calculable.

Thomas P. Riley's affidavit states that generally the sublicense fees charged by Plaintiff were based on the capacity of the establishment and that they varied for each event. For example he represents that, based on the Rate Card for the Event in dispute, Ex. A-3, if a commercial establishment had a maximum fire code occupancy of 200 persons, the sublicense fee would have been $2000. Lena Bush's affidavit, with attached photographs of Defendants' somewhat rustic, open-air establishment, establishes that the auditor entered Defendants' El River Park Soccer League, located in the city of Houston, at 9:15 p.m. on September 15, 2012, that there were three televisions broadcasting the Event at that time of the preliminary bout between Matthew Macklin and Joachim Alcine, that the Establishment had a capacity of

approximately 500 people.  The Rate Card for the Chavez/Martinez
closed circuit broadcast (#14-2, Ex. A-3) puts an establishment
with minimum seating for 401-500 people at a rate of $4200.
Before Ms. Bush left at 10:00 p.m., forty-five minutes after she
arrived, Ms. Bush counted the number of patrons present three
separate times, finding 26, 30, and 32 patrons, respectively.
Because Ms. Bush did not indicate whether there was any turnover
of patrons in that 45 minutes, the Court can only find with any
certainty that the number of patrons viewing the illegally
transmitted fight at Defendants' Establishment was at least 32.
Although Defendants' sale of food and beverages and their coverage
charge (to which defendants admit) for the unlicensed broadcast
reflects their private financial and commercial motives in
violating the statute, there is no evidence as to the amount of
the revenue that was collected from food and beverage sales or the
amount or number of the entrance cover charges by Defendants.  The
Court finds under the facts here that appropriate statutory
damages should be $4200.

Riley's affidavit asserts that Plaintiff lost and may
continue to lose customers if Defendants are not stopped because
legitimate commercial establishments presumably were and will in
the future be financially unable to compete with unauthorized
commercial establishments that have stolen closed-circuit
programming.  Plaintiff has also suffered damage to its reputation
and goodwill.

There is sufficient evidence that Defendants' violation
was willful and that additional damages are warranted.  As noted,

-22-

to be able to receive the broadcast, there had to be wrongful conduct. It is highly unlikely Defendants accidently intercepted the transmission of the Event since it was electronically coded; "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable*, 77 F. Supp. 2d at 490. The "limited methods by which defendants can access closed-circuit, pay-per-view events" make it unlikely that an establishment would intercept such broadcasts by chance. *J&J Sports Productions, Inc. v. Zeqiri*, Civ. A. No. 3:14-CV-4216-B, 2015 WL 5916693, at *5 (N.D. Tex. Oct. 7, 2015), *citing Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. July 29, 2002).

In determining the amount of "willful" damages under § 553(c)(3)(B) where Defendants intended to broadcast the Event to secure a private financial gain and direct commercial advantage by misappropriating Plaintiff's licensed exhibition and infringing on its rights, a court in its discretion considers factors such as the number of violations, the number of television sets on which Defendants broadcast the event, the food and drinks they sold to their patrons, the amount of the cover charge, and whether it was broadcast in a city where it would impact more potential customers. *See, e.g., Joe Hand Promotions, Inc. v. 152 Bronx, LP*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014). Other factors used by courts "in determining whether a defendant's wilful conduct justifies enhanced damages include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee

or charging premiums for food and drinks." *J&J Sports Productions, Inc. v. Jimenez*, Civ. No. SA-13-CA-358-FB, 2013 WL 12106233, at *3 (W.D. Tex. Nov. 13, 2013). Nevertheless, without evidence of amount of the cover charge imposed for viewing the match, and "[w]hile presumably defendants' patrons consumed food and/or beverage, without any evidence of these amounts, no award can be made for those sales." *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 485, 490 (2d Cir. 1999). For this reason the Court denies recovery for these unspecified expenses.

In reviewing the case law, this Court previously found regarding additional damages for willful violations that a multiplier of three to eight times the amount of statutory damages is appropriate. *J&J Sports Productions, Inc. v. Rivera*, Civ. A. No. H-13-902, 2014 WL 3533472, at *3 (S.D. Tex. July 14, 2014)(and cases cited therein). Here, however, because Defendants' illegal broadcast was a single violation of the statute, because there is no evidence that Defendants were repeat offenders, because there was no allegation of advertising of the broadcast by Defendants, because there were only three television sets broadcasting the Event in the Establishment, and because Ms. Bush's visit demonstrates that the Establishment had at most only thirty-two patrons on that night, the Court finds that an award of additional damages in double the amount of statutory damages, or $8400, is sufficient.

Regarding a fee award under 47 U.S.C. § 553(c)(2)(C), Plaintiff, submitting a copy of his resume (#14-3, Ex. B-1),

requests (1) $20,000 in attorney's fees for prosecution of this case up to entry of judgment; (2) $10,000 if a Defendant files a motion to vacate, a Rule 60 motion, motion for new trial or other post-judgment, pre-appeal motion that does not result in a reversal of the judgment obtained in this case; (3) and $25,000 in the event of an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the judgment obtained in this case; (4) $5,000 in the event a Defendant files a motion for rehearing or reconsideration on the Court of Appeals that does not result in a reversal of the judgment in this case; (5) $25,000 for making or responding to a petition for certiorari to the U.S. Supreme Court that does not result in a reversal of the judgment; (6) $75,000 for an appeal to the United States Supreme Court in the event that a petition for certiorari is granted and does not result in a reversal of the judgment; and (7) for collection of the judgment, $2,500 each time Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other post-judgment writ.  The Court denies 2-7 without prejudice as speculative and premature, but grants leave to Plaintiff to seek the same recovery in fees if and when they become appropriate.

The fee award under the FCA must be reasonable to be granted. *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). Under the circumstances of this case, the Court finds both Plaintiff's request in its complaint for a contingency fee of one third of the statutory and additional damages award to Plaintiff and Plaintiff's request in its motion for $20,000 to be excessive in light not only of the facts of this

case, but also of Diaz's affidavit stating that he reasonably expected the lawyers from his firm on the case to spend a minimum of eight hours. He provides no other hourly projection. Suggesting that different lawyers in his firm would work on the case, he asks for "a blended rate of $250 per hour" as "reasonable for anti-piracy litigation," in which his firm has substantial experience, and he cites a number of cases in which he received a fee award of that amount. This Court has presided over a number of similar cases brought by Mr. Diaz. The Court finds that Mr. Diaz, like his firm, has filed many "cookie-cutter," i.e., nearly identical, cases, so he should not need to expend as much time as on this one as he might on a case with different facts and different governing law. The Court agrees a $250 hour fee is a reasonable amount in the Houston community for such work. Mr. Diaz attaches a copy of the *Texas Lawyer 2014 Salary and Billing Report*, published in *Texas Lawyer* on July 28, 2014 (#14-3, Ex. B-2), which supports his claim that this hourly fee is reasonable in Houston, Texas. Accordingly, the Court approves of a lodestar of eight hours times $250 per hour, for an award of fees in the amount of $2,000.

Plaintiff is entitled to recover costs of court under § 553(c)(2)(C).

Plaintiffs seek a permanent injunction under § 553(c)(2)(A), enjoining Defendants from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act. The Court finds that the statute, itself, already serves that purpose, making such conduct illegal, and

therefore denies the request, as an injunction would merely be redundant. *See, e.g., Joe Hand Promotions, Inc. v. Alima*, Civ. A. No. 3:13-CV-0889-B, 2014 WL 1632158, at *6 (N.D. Tex. Apr. 22, 2014); *Zeqiri*, 2015 WL 5916693, at *7 (denying request for a permanent injunction because "the Court funds an injunction unnecessary to the extent it is merely intended to prevent Zeqiri from violating the FCA").

Finally Plaintiff is entitled to post-judgment interest. Accordingly, to the extent indicated above, the Court ORDERS that Plaintiff's motion for summary judgment is GRANTED. Final judgment shall issue by separate order.

**SIGNED** at Houston, Texas, this  28th  day of  October , 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE